**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DELTONA TRANSFORMER CORPORATION
d/b/a DELTRAN, a Florida corporation

      Plaintiff,

HARBOR FREIGHT TOOLS USA, INC.,
a Delaware corporation, and
DOUBLE J MACHINERY AND TOOLS
CO., LTD., a foreign corporation,

      Defendants.

Case No.: 6:14cv2010-JA-28KRS

_____/

## COMPLAINT FOR TRADE DRESS INFRINGEMENT, TRADE DRESS DILUTION, AND COMMON LAW UNFAIR COMPETITION – INJUNCTIVE RELIEF SOUGHT-JURY TRIAL DEMANDED

Plaintiff, Deltona Transformer Corporation, d/b/a Deltran ("Deltran"), hereby sues Defendants, Harbor Freight Tools USA, Inc., d/b/a Harbor Freight Tools ("Harbor Freight"), and Double J. Machinery and Tools Co., Ltd., d/b/a Centech and ChargeLogic ("Double J. Machinery"), and alleges:

## PARTIES, JURISDICTION AND VENUE

1.     This is an action for injunctive relief and damages in excess of $75,000.00 based on the Defendants' infringement of Deltran's trade dress, unfair competition and deceptive trade practices.

2.     Deltran is a Florida corporation organized and existing under the laws of the State of Florida with its principal place of business located in Deland, Florida.

3.     Harbor Freight is a Delaware corporation organized and existing under the laws of the State of Delaware with its principal place of business located in the State of California.

{29975470;11}

4.      Double J. Machinery is Chinese corporation organized and existing under the laws of the county of China with its principal place of business located in the county of China.

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. §§ 1121 and 1125 because the claims asserted herein arise under the trademark laws of the United States.  This Court also has supplemental jurisdiction over the state law claim asserted herein pursuant to 28 U.S.C. § 1367 because such claim is so related to the federal claims that it forms part of the same case or controversy and derives from a common nucleus of operative facts.

6.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 because there is a complete diversity of citizenship among the parties and because the amount in controversy is greater than $75,000.00.

7.      Defendants have all committed the acts complained of herein in the Middle District of Florida for the Defendants' wrongful gain and profit.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because the Plaintiff's claim arises in this District.

## BACKGROUND

9.      Deltran is a highly successful and respected business since 1965 engaged in the engineering, manufacturing, and wholesale and retail sale of advanced battery charging systems. Deltran supplies battery chargers for automobiles and motorcycles; lawn and garden motors; recreational and marine, farm, industrial, and electric vehicles; and telecom and standby power, and solar controllers.  Deltran also offers accessories, such as battery charger cases, ring terminal harnesses, alligator clips, adapters, and power connect battery

connector plugs, as well as related apparel, such as caps and T-shirts, to promote the good will of Deltran's brand.

10.    Deltran's goods are offered to the public by many and various means throughout the United States in interstate commerce and internationally, including throughout Canada, Europe, Australia, and Asia.

11.    Deltran has been using its BATTERY TENDER® mark continuously and extensively in conjunction with the sale of battery chargers for 23 years, that is, since December of 1991. Deltran has had well in excess of $100,000,000.00 in sales of its BATTERY TENDER® battery chargers during that 23-year period. These sales figures make the BATTERY TENDER® battery charger the number one selling battery charger in the power sports industry today.

12.    Further, Deltran spends over $1,000,000.00 per year advertising and marketing its BATTERY TENDER® brand battery chargers. This advertising is disseminated through multiple channels including television, magazines, newspapers. the Internet, and can be found on race cars and motorcycles used in professional racing.

13.    For the past fifteen years, Deltran's BATTERY TENDER® battery charger has been the only official authorized battery charger for the Harley-Davidson® Motorcycle Company. Deltran also brands battery chargers for BMW® Automotive, BMW® Motorcycle, Lexus®, and Corvette®.  Four years ago, Deltran contracted a dual branded line of BATTERY TENDER® chargers for AAA® clubs throughout the United States and Canada which combined have over fifty-three million members.  AAA offers its members special offers on BATTERY TENDER® products with print ads in its own bi-monthly magazine. Deltran's BATTERY TENDER® brand battery chargers are consistently touted

by the motorcycle and power sports industries as being the number one brand battery charger available.  Furthermore, Deltran's BATTERY TENDER® battery chargers are not only sold throughout the United States and Canada but are also distributed throughout Europe, Austrialia, and Asia as well, resulting in worldwide recognition of Deltran's BATTERY TENDER® mark.

14.    Deltran's BATTERY TENDER® brand battery chargers and related goods and accessories may be purchased over the Internet through multiple distributors, including through Amazon.com and are also available in multiple brick and mortar locations including, but not limited to, Sears, Walmart and most auto parts/auto accessory retail stores.

15.    Deltran's hard work, efforts, and many accomplishments have contributed to its excellent reputation and goodwill, making Deltran a well-known, envied, and recognized name in its field.

16.    Deltran's brand identity, creativity and innovations in the engineering, manufacturing and promotion of its goods and the goodwill associated with its business have, in large part, contributed to its success.

17.    Since its inception in 1965, Deltran has worked hard to separate itself from the competition and the commercial identity and resultant valuable goodwill associated with its business has resulted in millions of customers and considerable acclaim, unsolicited publicity, and widespread public acceptance.

18.    Deltran is well-known not only to the relevant consuming public, but also to its business competitors, including the Defendants.

**Deltran's Trademark Rights**

19.    Deltran is the owner of all rights, title, and interest in the trademarks BATTERY TENDER®, DELTRAN BATTERY TENDER®, DELTRAN BATTERY TENDER® (Design Mark), POWER TENDER®, and SUPERSMART BATTERY CHARGER® (hereinafter referred to collectively as the "Deltran Marks"), for use on and in connection with its goods, and ardently enforces all rights in connection therewith.

20.    Deltran is the owner of U.S. Registration Nos. 3,474,591; 4,281,421; 4,455,454; 4,509,295; and 1,746,603 for the Deltran Marks (collectively, the "U.S. Registrations"), which registrations are a matter of public record and serve as constructive notice to the public of Deltran's trademark rights.   True and correct copies of U.S. Registrations are attached hereto as **Composite Exhibit "A"**.

21.    Deltran is also the owner of Florida Trademark Registration No. T12000000105 for BATTERY TENDER, which registration is a matter of public record and serves as constructive notice to the public of Deltran's trademark rights. A true and correct copy of Florida Trademark Registration No. T12000000105 is attached hereto as **Exhibit "B"**.

22.    Although not the subject of this Complaint, but relevant to the worldwide recognition of the BATTERY TENDER mark, Deltran is also the owner of European Trademark Registration No. 1940568 for BATTERY TENDER; Australian Trademark Registration No. 912319 for BATTERY TENDER; and China Trademark Registration No. 3969198 for BATTERY TENDER.

23.    Deltran's goods have been widely advertised and expansively offered to the public for sale and promoted under the Deltran Marks.

24.    The Deltran Marks have been in use in Florida since 1991 and in interstate commerce since at least 1992. The Deltran Marks have become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Deltran, its high quality goods, and its goodwill.

25.    Deltran enjoys considerable success and an enviable reputation in its business activities and related goods, promotions and activities due in large part to its use of, and rights in the Deltran Marks.

26.    Deltran has made considerable expenditures and sacrifices to achieve the success it now enjoys in connection with its goods sold under the Deltran Marks.

27.    As a result of Deltran's favorable reputation and considerable investments and promotions, the Deltran Marks have become synonymous with high quality within the field of battery charging systems.

28.    The Deltran Marks have been extensively and continuously advertised and promoted to the public through various means and modes. By reason of such advertising and promotion, the public has come to recognize Deltran's goods under the Deltran Marks as emanating from Deltran.

29.    Deltran's significant advertising and marketing efforts to date under the Deltran Marks have been successful, and have enhanced Deltran's goodwill and brand recognition in the Deltran Marks, as well as continuously attracted new customers and referrals to the goods provided by Deltran under its valuable trademarks.

30.    Deltran's extensive advertising and marketing efforts have caused customers and potential customers to identify Deltran as the sole source of exceptional goods offered in the United States, Canada, Europe, Australia, and Asia under the Deltran Marks. As

such, the distinctiveness of the Deltran Marks and Deltran's connection to the goods and services offered under the Deltran Marks have, in fact, been established in the minds of the consuming public.

31.    Deltran enforces its rights herein under the Deltran Marks in order to protect the very valuable rights and excellent reputation Deltran has worked so hard to achieve and to prevent public confusion between Deltran and its competitors.

**Deltran's Inherently Distinctive Trade Dress Rights**

32.    Deltran is the owner of all rights, title, and interest in the inherently distinctive design, packaging, and labeling for its BATTERY TENDER® Junior battery chargers, which has successfully attracted millions of customers to its products (hereinafter referred to as Deltran's "Trade Dress") and enforces all rights in connection therewith.

33.    Deltran's Trade Dress is valid and legally subsisting and as such is evidence of Deltran's exclusive right to use its Trade Dress in commerce within the United States, Canada, Europe, Australia, and Asia for its product.

34.    Deltran's distinctive Trade Dress includes, but is not limited to: (1) the overall look and feel of and the packaging and labeling for its BATTERY TENDER® Junior battery charger; (2) the distinctive shape of the charger; (3) the distinctive markings on the charger; (4) the locations of the labels on the charger; (5) the distinctive protrusions and indentations on the charger; (6) the distinctively shaped cables for the charger; (7) the overall appearance and feel of the packaging of the charger; (8) the distinctive shape of the packaging for the charger; (9) the distinctive curvature of the packaging for the charger; (10) the distinctive protrusions and indentations in the packaging for the charger; (11) the distinctive scheme of pictures and text on the packaging for the charger; and (12) the distinctive shape of the cardboard insert in the packaging for the charger.

35.    Deltran's Trade dress is not related to the function of the BATTERY TENDER® Junior battery charger.

36.    Deltran's distinctive design for its BATTERY TENDER® Junior battery charger and the packaging and labeling therefor serve as a source identifier and designation of origin to the consuming public. The consuming public associates Deltran's distinctive Trade Dress exclusively with Deltran's products and the Deltran Marks.

37.    The distinctive design for the BATTERY TENDER® Junior battery charger was developed with care, innovation, and commercial expertise and is of such an unusual design and configuration that customers will, and immediately do, rely upon it to differentiate the source of the goods being offered and the same has been widely used and offered in public and in commerce, by Deltran, in connection with its BATTERY TENDER® Junior battery charger sold under the Deltran Marks.

38.    Deltran's Trade Dress provides Deltran with a competitive advantage and has become, through its use and widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Deltran, its high quality goods, and its goodwill.

39.    Deltran enjoys considerable success and an enviable reputation in its business activities and goods and promotions due in large part to its use of, and rights in, Deltran's Trade Dress.

40.    Deltran has made considerable expenditures and sacrifices to achieve the success it now enjoys in connection with its Trade Dress.

41.     Deltran's distinctive Trade Dress has become synonymous with Deltran and the Deltran Marks and has acquired strong secondary meaning within the minds of the relevant consuming public.

42.     Deltran's significant advertising and marketing efforts to date under Deltran's Trade Dress have been successful, and have enhanced Deltran's goodwill and brand recognition, as well as continuously attracted new customers to the goods provided by Deltran under its valuable Trade Dress.

43.     Deltran's extensive advertising and marketing efforts have caused customers and potential customers to identify Deltran as the sole source of exceptional goods offered under Deltran's Trade Dress and its connection to the goods offered under Deltran's Trade Dress has, in fact, been established in the minds of the consuming public.

44.     Deltran enforces its rights herein under Deltran's Trade Dress in order to protect the very valuable rights and excellent reputation Deltran has worked so hard to achieve and to prevent public confusion.

## ILLEGAL ACTS OF THE DEFENDANTS

45.     Double J. Machinery is a manufacturer of, among other things, battery chargers that infringe on Deltran's Trade Dress (the "Infringing Chargers"). Double J. Machinery manufactures such Infringing Chargers in China and then markets and sells the Infringing Chargers in the United States to companies that then resell the Infringing Chargers to the general public.

46.     Double J. Machinery sells the Infringing Chargers in the United States under the brand names "CenTech" and "ChargeLogic".

47.     Harbor Freight is a company that operates a nation-wide chain of discount hardware stores under the name "Harbor Freight Tools". Harbor Freight also operates a

website located at the URL weblink "http://www.harborfreight.com/" by which Harbor Freight markets and sells hardware and tool products throughout the United States. Harbor Freight's tagline is "Quality Tools at Ridiculously Low Prices".

48.    Harbor Freights sells the Infringing Chargers manufactured by Double J. Machinery on Harbor Freight's website and in its stores, including multiple stores located in the Middle District of Florida. Harbor Freight operates 44 stores in the State of Florida, the majority of which are located in the Middle District of Florida. A true and correct copy of a screenshot of the listing on Harbor Freight's website for the Infringing Charger is attached hereto as **Exhibit "C"**.

49.    The Infringing Chargers are essentially identical in appearance to Deltran's BATTERY TENDER® Junior battery charger in numerous aspects that have no connection to the functionality of the product. Among many other things, the Infringing Chargers are the same distinctive shape, contain the same distinctive markings in the same distinctive locations, contain labels in identical locations, contain identical protrusions and indentations, and contain the same distinctively shaped cables as Deltran's BATTERY TENDER® Junior battery charger.

50.    Moreover, the plastic packaging in which Double J. Machinery and Harbor Freight package and sell the Infringer Chargers is essentially identical to the packaging in which Deltran sells the BATTERY TENDER® Junior battery charger. Other than these differences, the appearance of the packaging of the Infringing Chargers is essentially identical to the BATTERY TENDER® Junior battery charger. Among many other things, the plastic packaging for the Infringing Chargers has the same distinctive shape, the same distinctive curvature, the same distinctive protrusions and indentations, the same

distinctive scheme of pictures and text, and a cardboard insert that is the exact same shape as the packaging for Deltran's BATTERY TENDER® Junior battery charger.

51.     The trade dress wrongfully used by the Defendants as described above shall hereinafter be referred to as the "Infringing Trade Dress".

52.     Defendants are competing with Deltran in the sale of battery chargers and are intentionally, consciously and systematically using the Infringing Trade Dress in order to exploit the goodwill and substantial advertising and marketing expenditures of Deltran.

53.     At all times material to the issues presented herein, Defendants had actual, prior knowledge of Deltran, the Deltran Marks, Deltran's Trade Dress, the U.S. Registrations, and Deltran's business success.

54.     Further, in connection with their business, Defendants, with complete disregard for Deltran's rights, have been openly, regularly and actively engaged in the illegal, unauthorized, infringing, unlicensed, and imitative use of the same, non-functional Trade Dress as that owned by Deltran, for the same goods, all offered to the public in the same or similar geographic area as Deltran in direct competition with Deltran.

55.     Defendants, unless enjoined by this Court, will continue to use the Infringing Trade Dress, and cause further irreparable damage and harm to Deltran.

56.     This offering to the pubic of goods by Defendants using the Infringing Trade Dress is, and has been, without permission or authority of Deltran and without any legitimate license to use Deltran's Trade Dress.

57.     The Defendants have wrongfully used and offered their Infringing Trade Dress to the public utilizing this Middle District of Florida as a forum for their infringing activities and with knowledge of the source of the Infringing Trade Dress and with

knowledge of the fact that the Infringing Trade Dress is neither genuine nor authorized by Deltran.

58.     By offering goods for promotion and sale using the Infringing Trade Dress, Defendants have misrepresented and falsely described to the general public the origin and source of Defendants' goods so as to deceive the public and deliberately create the likelihood of confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Deltran, or as to the origin, sponsorship, or approval of Defendants' goods, or commercial activities by the ultimate purchaser as to both the source and sponsorship of Defendants' goods.

59.     Defendants' goods offered under their Infringing Trade Dress are inferior in quality to the goods authorized to be sold by Deltran, and the promotion and sale of the Defendants' goods has, does, and will continue to damage and dilute the goodwill Deltran has developed in connection with offering legitimate, authorized goods under Deltran's Trade Dress.

60.     Defendants, with full knowledge of the notoriety of Deltran's Trade Dress, intended to, and did, trade on the goodwill associated with Deltran, have committed acts of unfair competition, have engaged in deceptive and unfair business practices, have been unjustly enriched and have misled and will continue to confuse and mislead the public into assuming a connection between Deltran and Defendants by Defendants' offering to the public their goods under the Infringing Trade Dress.

61.     Defendants have offered for sale and sold in the Middle District of Florida and in interstate commerce goods under the Infringing Trade Dress, which is confusingly to Deltran's Trade Dress, thus creating a likelihood of confusion, deception, and mistake as

to the affiliation, connection, or association of Defendants with Deltran, or as to the origin, sponsorship, or approval of Defendants' goods by Deltran.

62.     The use by Defendants of the Infringing Trade Dress constitutes a knowing and willful use of a false designation of origin and a false description or representation that wrongly and falsely designates Defendants' goods offered to the public by Defendants as originating from, or connected with, Deltran, and constitutes utilizing false descriptions or representations in public.

63.     The imitation, reproduction, and unauthorized use of the Infringing Trade Dress causes irreparable injury to Deltran, including injury to its business reputation and dilution of the distinctive quality of Deltran's Trade Dress.

64.     Defendants' use of the Infringing Trade Dress has, does, and is likely to permit Defendants to pass off their goods as those of Deltran's, all to the detriment of Deltran and to the unjust enrichment of Defendants.

65.     Defendants' use of the Infringing Trade Dress has caused actual confusion in the marketplace and does cause, and is likely to continue to cause, damage to Deltran by tarnishing the valuable reputation and image associated with Deltran and its goods.

66.     The actual public confusion and mistake described above has resulted in a wrongful diversion of customers to Defendants, and such wrongful diversion is continuing in nature.

67.     Defendants, unless enjoined and restrained by this Court, will continue to further pass off their goods as those of Deltran by their many and continuing acts of misrepresentation to the consuming public, members of which are likely to, and do, believe that Defendants' goods emanate from or are associated with Deltran.

## COUNT I

## VIOLATION OF THE LANHAM ACT (TRADE DRESS INFRINGEMENT) (15 U.S.C. § 1125(a))

68.      Deltran repeats and realleges Paragraphs 1 through 67 above as if fully set forth herein.

69.      This Count I is for Trade Dress Infringement in violation of 15 U.S.C. §1125(a) against the Defendants.

70.      Deltran's Trade Dress is inherently distinctive, primarily non-functional, and has acquired strong second meaning in the minds of the consuming public.

71.      The Defendants' infringement of Deltran's Trade Dress as described herein constitutes use in connection with Defendants' goods and the containers for such goods in commerce of a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact which is likely to cause confusion, mistake or deception as to an affiliation, connection, or association with Deltran, or as to the origin, sponsorship or approval of Defendants' goods, all in violation of 15 U.S.C. §1125(a).

72.      The Defendants' infringement of Deltran's protected Trade Dress as described herein constitutes use in connection with Defendants' goods and the containers for such goods in commerce of a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact in a commercial advertising or promotion that misrepresents the nature, characteristics, and qualities of the Defendants' goods, all in violation of 15 U.S.C. §1125(a).

73.      Deltran has suffered a compensable injury by reason of the Defendants' repeated and persistent activities outlined in this Count I, and Deltran is likely to suffer an irreparable injury unless the Defendants' activities are permanently enjoined.

74. The Defendants' infringing activities were and are a willful, reckless and wanton disregard for Deltran's rights, justifying an award of exemplary damages and attorneys' fees.

75. Deltran has been required to hire an attorney in this matter to which it is obligated to pay a reasonable fee.

WHEREFORE, Plaintiff, Deltona Transformer Corporation, respectfully prays that this Honorable Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a)    enter judgment in favor of Plaintiff;

(b)    permanently enjoin the Defendants' infringement of Plaintiff 's protected Trade Dress;

(c)    an award of Plaintiff's actual damages;

(d)    an award of the Defendants' profits gained from the Defendants' wrongful conduct;

(e)    an award of attorneys' fees;

(f)    an award of exemplary damages; and

(g)    any such other and further relief as this Court deems just and proper.

## COUNT II

## VIOLATION OF THE LANHAM ACT (TRADE DRESS DILUTION)
## (15 U.S.C. § 1125(c))

76. Deltran repeats and realleges Paragraphs 1 through 67 above as if fully set forth herein.

77. This Count II is for Trade Dress Dilution in violation of 15 U.S.C. §1125(c) against the Defendants.

78.    The Defendants' use in commerce of the Infringing Trade Dress in connection with the Defendants' goods is in violation of 15 U.S.C. § 1125(c) as such use has caused and continues to cause dilution of Deltran's Trade Dress by blurring and tarnishment of Deltran's famous Trade Dress.

79.    Deltran's Trade Dress is distinctive and famous and has been since before the Defendants began using the Infringing Trade Dress.  Deltran's Trade Dress has long been used throughout the United States and elsewhere in the world in connection with the goods on which it appears, has long been the subject of substantial advertising and promotion throughout the United States and elsewhere in the world, and is widely recognized by the general consuming public of the United States as a designation of source of Deltran's goods.

80.    Deltran's Trade Dress is in substantially exclusive use by Deltran in connection with its goods.

81.    Deltran has suffered compensable injury by reason of the Defendants' conduct as outlined in this Count II, and will likely suffer irreparable injury unless the Defendants' activities are permanently enjoined.

82.    The Defendants' use of Deltran's Trade Dress is willful, and committed with the intent to trade upon the reputation of Deltran and to cause dilution of Deltran's Trade Dress.

83.    Deltran has been required to hire an attorney in this matter to which it is obligated to pay a reasonable fee.

WHEREFORE, Plaintiff, Deltona Transformer Corporation, respectfully prays that this Honorable Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a)    enter judgment in favor of Plaintiff;

(b)    permanently enjoin the Defendants' infringement of Plaintiff 's protected Trade Dress;

(c)    an award of Plaintiff's actual damages;

(d)    an award of the Defendants' profits gained from the Defendants' wrongful conduct;

(e)    an award of attorneys' fees;

(f)    an award of exemplary damages; and

(g)    any such other and further relief as this Court deems just and proper.

## COUNT III- COMMON LAW UNFAIR COMPETITION

84.    Deltran repeats and realleges Paragraphs 1 through 67 above as if fully set forth herein.

85.    This Count III is an action for unfair competition in violation of the common law of Florida against the Defendants.

86.    The Defendants' past and continued use of Deltran's Trade Dress in connection with Defendants' goods, as set forth above, constitutes unfair competition under the common law of Florida where the Defendants' false designation of the origin of Defendants' goods has caused and will likely continue to cause consumer confusion, mistake and deception; and therefore, is likely to dilute and cause harm to the value of Deltran's Trade Dress.

87.     Unless permanently enjoined by this Court, the Defendants' continued use of Deltran's protected Trade Dress in connection with Defendants' goods will continue to result in a likelihood of further public confusion, mistake, and deception concerning the source or origin of the services provided and offered for sale, and sold by the Defendants; and will produce attendant dilution and damage to Deltran and its goodwill for which Deltran has no adequate remedy at law.

88.     The Defendants adopted Deltran's Trade Dress with a willful, wanton and reckless disregard for Deltran's rights, so as to justify an award of punitive damages.

89.     The Defendants' continued infringement is facially willful, wanton and contumacious.

WHEREFORE, Plaintiff, Deltona Transformer Corporation, respectfully prays that this Honorable Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a)     enter judgment in favor of Plaintiff;

(b)     permanently enjoin the Defendants' infringement of Plaintiff 's protected Trade Dress;

(c)     an award of Plaintiff's actual damages;

(d)     an award of the amount by which the Defendants were unjustly enriched as a result of the Defendants' wrongful conduct;

(e)     an award of attorneys' fees;

(f)     an award of punitive damages; and

(g)     any such other and further relief as this Court deems just and proper.

## COUNT IV- DECEPTIVE AND UNFAIR TRADE PRACTICES

90.     Deltran repeats and realleges Paragraphs 1 through 67 above as if fully set forth herein.

91.     This is a cause of action for damages and injunctive relief against the Defendants arising out of violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") codified in Section 501.201 et. seq. of the Florida Statutes.  FDUTPA applies to "unfair methods of competition, unconscionable acts or practices, and unfair and deceptive practice in the conduct of any trade or commerce."  "Trade or commerce" is further defined under Section 501.203 to encompass " advertising, soliciting, providing, offering, or distributing . . . any good or service."  Section 501.211 permits any "person" – including entities such as Deltran – to bring an action for actual damages, plus attorney's fees and costs, who suffers a loss as a result of a violation.

92.     Deltran is an "aggrieved person" under FDUTPA and has standing to bring this claim, and Boruch has suffered a loss a result of FDUTPA violations by Defendants.

93.     Defendants engaged in unfair methods of competition and/or unfair and/or deceptive acts of practices, unconscionable acts or practices, in the conduct of trade or commerce, which acts or practices are unlawful, pursuant to Section 501.204, Florida Statutes.

94.     Pursuant to Section 501.201(i), entry of an injunction to enjoin Defendants from continuing to violate FDUTPA is necessary and appropriate.  Deltran has suffered and is continuing to suffer irreparable damages, and is without adequate remedy at law. Unless enjoined by the Court, the FDUTPA violation of Defendants will continue.

95.     As a direct and proximate result of these violations of FDUTPA by Defendants, Deltran has sustained actual losses and damages.

WHEREFORE, Plaintiff, Deltona Transformer Corporation, respectfully prays that this Honorable Court enter such orders, judgments and injunctions as are necessary to provide the following relief:

(a)    enter judgment in favor of Plaintiff;

(b)    permanently enjoin the Defendants' from engaging in deceptive and unfair trade practices as set forth hereinabove;

(c)    an award of Plaintiff's actual damages;

(d)    an award of attorneys' fees;

(f)    any such other and further relief as this Court deems just and proper.

## DEMAND FOR ATTORNEY'S FEES

Plaintiff Deltona Transformer Corporation hereby demands an award of its attorneys' fees incurred in this action.

## JURY TRIAL DEMANDED

Plaintiff Deltona Transformer Corporation hereby demands a jury trial.

DATED: December 5, 2014.                    Respectfully submitted,

**T. Todd Pittenger, Esq.**
Florida Bar No.: 0768936
todd.pittenger@akerman.com
**Joshua A. Mize, Esq.**
Florida Bar Number: 0086163
joshua.mize@akerman.com
**AKERMAN LLP**
Post Office Box 231
420 South Orange Avenue, Suite 1200
Orlando, FL  32802-0231
Phone:  (407) 423-4000
Fax:  (407) 843-6610

AND

**Michael K. Dixon, Esq.**
Florida Bar Number: 482633
michael.dixon@akerman.com
**AKERMAN LLP**
222 Lakeview Avenue
Fourth Floor
West Palm Beach, FL  33401
Phone:  (561) 653-5000
Fax:  (561) 659-6313

*Attorneys for Plaintiff,*
*Deltona Transformer Corporation*